# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ANITA K. FERRER,**

        **Plaintiff,**

**-vs-**                                                **Case No. 6:05-cv-1802-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on Plaintiff's petition to review the denial of her claim for Social Security benefits. For the reasons set forth herein, the administrative decision is **AFFIRMED.**

### *PROCEDURAL HISTORY*

Plaintiff filed an application for a period of disability and disability insurance benefits on June 13, 2001, alleging an onset date of May 19, 2000 (R. 134-136). This application was administratively denied initially and on reconsideration (R. 129, 125) and Plaintiff requested and received a hearing before an Administrative Law Judge (herein "the ALJ"). The ALJ issued a decision denying her claim on February 5, 2004 (R. 388-95). Plaintiff filed a request for review (R. 396-98), and on August 18, 2004, the Appeals Council remanded the case for further proceedings (R. 405-06).[1]  After a

---

[1] As stated by Plaintiff in her brief, "The Appeals Council noted that the ALJ: (i) failed to obtain vocational expert testimony regarding the extent to which Ms. Ferrer's limitations erode the occupational base for sedentary work; (ii) failed to discuss the opinions of treating physicians (Dr. Sambitan and Lakeside Alternatives) regarding Ms. Ferrer's mental impairments and failed to provide a rationale as to why he did not accept them; and (iii) failed to discuss the EMG testing in 4/02 regarding Ms.Ferrer's bilateral upper extremities or the grip strength testing results from 3/03 and failed to provide rationales as to why he did not accept them (R. 404)." (Doc. No. 15, fn. 2)

subsequent hearing on February 25, 2005 (R. 70-115), the ALJ issued a decision on June 29, 2005, finding Plaintiff not disabled (R. 11-24). Plaintiff requested Appeals Council review of the second decision, which was denied (R. 10, 7). Plaintiff timely filed the instant action, which is now ripe for review (Doc. No. 1).

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims to be disabled due to carpal tunnel syndrome, bipolar disorder, schizophrenia, anxiety and depression, migraines, boils, and spasms in the neck and back (R.164).

*Summary of Evidence Before the ALJ*

Plaintiff, born in 1962, was 42 years old when the ALJ issued his second decision, and was therefore considered a "younger individual" (R. 24, 134). Plaintiff has more than a high school education, and past work experience as a cook, dishwasher and assistant for disabled individuals (R. 14, 165, 170).

The medical evidence before the ALJ is set forth in the ALJ's decision. By way of relevant summary,[2] Plaintiff has experienced medically documented mental health difficulties (including major depression and a suicide attempt) since before her alleged onset date (*see* R. 193, 189, 215, 207, 209, 213, 211, 202, 269-274, 217-229). Additionally, Plaintiff's medical records indicate treatment for a variety of other conditions.

On March 21, 2001, Plaintiff went to the Apopka Clinic for medical treatment (R. 314). The staff noted recurrent boils, morbid obesity, HTN [hypertension], and bipolar disorder (as reportedly diagnosed by Lakeside Alternatives) (R. 314). Her weight was 281.5 lbs. (R. 314). On return visit

---

[2] The medical record contains evidence of certain conditions, such as allergies, cecal polyps and the like, which are not addressed in Plaintiff's brief as being disabling or contributing to a finding of disability, and are therefore not included in this Opinion.

April 5, her weight was 286 lbs. (R. 313) On April 12, 2001, she returned with symptoms of a kidney infection and complaints of boils over her entire body; her weight was 288 lbs. (R. 312). On April 21, she complained of back pain with edema in her feet; her weight was 295 lbs. (R. 311). On comprehensive physical exam April 26, 2001, her weight was down to 285 lbs. (R. 310). On May 10, 2001, she was diagnosed with obesity, dependent edema, LBP [lower back pain], decreased thyroid functioning, increased lipids, possible peripheral vascular disease (PVD), and possible carpal tunnel syndrome (R. 309). On May 17, 2001, Plaintiff reported that she "feels good;" no abnormal findings appeared on examination (except for a notation regarding her obesity) and a lumbar spinal x-ray reportedly was within normal limits (WNL) (R. 308).

On November 18, 2001, Plaintiff underwent a consultative physical examination by Dr. Alex Perdomo in connection with her disability claim (R. 250). Dr. Perdomo noted that she complained of diffuse joint and muscle aches with pain in her hips, lower back and knees; that she had a history of anxiety and depression, but that she was feeling better with current psychiatric medications; that she had a past medical history of HTN, CTS, and a cholecystectomy; and that her weight was 294 lbs. (R. 250). On examination, she had normal grip strength and fine manipulation, and normal gait. Range of motion was affected in the shoulders with abduction, but was full in the lower extremities. She had decreased range of motion in the cervical spine. Neurologically, she had intact sensory and motor functions, and deep tendon reflexes. An x-ray of the right knee revealed osteoarthritis. He opined that she could perform light duty work, avoiding standing for more than four hours a day, avoiding prolonged walking, repetitive bending, squatting or kneeling, and avoiding lifting more than 25 lbs. (R. 251).

On November 29, 2001, a non-examining state agency physician completed a Physical Residual Functional Capacity (RFC) form which found that Plaintiff could lift twenty pounds frequently and 10 pounds occasionally; could stand/walk/ sit for six hours and had otherwise unlimited push/pull ability. (R. 252, 253). The RFC noted Plaintiff's carpal tunnel allegations and her weight, and that she had normal grip and fine manipulation (R. 252-259).

Her next medical treatment record indicates that Plaintiff presented herself to a clinic run by Shepherd's Hope on November 12, 2002, requesting a physical evaluation for social security purposes (R. 303). Other than a notation that she was obese, her physical exam was noted to be within normal limits (R. 303).

On February 19, 2002, another state agency non-examining physician opined that Plaintiff could lift 20 pounds frequently, 10 pounds occasionally; could stand or walk 2-4 hours and sit 6 hours in a workday, and had otherwise unlimited push/pull capacity (R. 278). She could only occasionally kneel, crouch, crawl or stoop (R. 279). It was noted that Plaintiff weighed 294 lbs. and suffered from morbid obesity, anxiety, depression, and joint pain mostly in her low back, hips and knees; but this RFC also concluded that she had normal grip strength and manipulative dexterity (R. 279).

Dr. Kevin Cox (orthopedist) evaluated Plaintiff on March 25, 2002, for low back, bilateral knee, ankle and hand pain (R. 379). Plaintiff reported to Dr. Cox that "her worst problems are numbness and tingling in both hands" which condition causes her to constantly wake up during the night and to lose her grip on objects (R. 379). She had a positive Phalen's test for numbness and tingling in the index, long and ring fingers of both hands, but her hands showed normal range of motion and no noticeable atrophy (R. 380). Plaintiff had grossly normal grip strength with good peripheral pulses and capillary refill (R. 380). Dr. Cox assessed Plaintiff with bilateral carpal tunnel

syndrome, and recommended nerve tests for further evaluation. Dr. Cox noted that: "I think this will be important in preventing further nerve damage and also to make her hands more useful in her future job pursuits" *Id.* It was felt that Plaintiff's current work abilities were quite limited and included no repetitive bending, stooping or heavy lifting; however, Dr. Cox believed that Plaintiff's current condition could be improved upon, and her work abilities might be increased with treatment (R. 381).

On April 22, 2002, Dr. Imfeld saw Plaintiff for an electrodiagnostic consultation (R. 382-84). Dr. Imfeld reported that test results revealed abnormal nerve conduction studies and needle EMG consistent with median nerve compression at both wrists, the right being very severe and the left being moderately severe (R. 383). There was no evidence of cervical radiculopathy or brachial plexopathy, and no evidence of peripheral neuropathy (R. 383). On physical examination, Dr. Imfeld reported that manual muscle testing revealed normal strength in the shoulder abductors, external rotators, supraspinatus, elbow and wrist flexors and extensors and hand intrinsics (R. 382).

Plaintiff treated with a chiropractor from June 2002 through April 2003 and the treatment notes are of record (R. 339-368).

On November 9, 2004, Plaintiff underwent another physical consultative examination (R. 443). The examiner, orthopedist James Ryan, M.D., noted that her grip strength was 4/5 bilaterally and that she had a negative Tinel's sign for CTS with normal sensation in her fingers and hands (R. 444). Dr. Ryan assessed Plaintiff with chronic obesity and chronic neck and back pain with no neurological deficits. Dr. Ryan concluded that, based upon the orthopedic findings, Plaintiff should be able to do "light to moderate duty with avoiding heavy lifting due to her obesity" and that she had no manipulative limitations (R. 444; 450). Dr. Ryan noted that he "saw no evidence of neurologic

deficits or motor problems which would prevent [Plaintiff] from doing these types of activities." (R. 444). On the medical assessment, Dr. Ryan indicated that Plaintiff had the RFC for light work with occasional limitations on climbing, kneeling, crouching, crawling and stooping (R. 448-49). It appears that Dr. Ryan did not review the electrodiagnostic studies.

The ALJ also ordered a mental status consultative examination with Dr. Hugh Brown on November 1, 2004 (R. 452) Dr. Brown found Plaintiff to be fully oriented in all three spheres; her appearance, speech and language and motor behavior were unremarkable; her mood was euthymic and she showed no indications of psychopathology or personality disorder (R. 453). In commenting on her MMPI-2 testing results, Dr. Brown noted that the test was invalid, but interpreted this invalidation to suggest a "plea for help, conscious or subconscious exaggeration of her symptoms or confusion." (R. 453). Dr. Brown felt that her diagnosis was compatible with schizoaffective disorder, by history (R. 453), and noted that Plaintiff would have slight to moderate difficulties understanding, carrying out and remembering instructions and responding appropriately to supervision, coworkers and work pressures (R. 454; 457-59).

At the two hearings, Plaintiff testified at length as to her pain and limitations (R. 33-107). She also testified as to her activities, which included household chores (washing dishes, vacuuming, helping with the laundry, cleaning the bathroom) (R. 82), reading and watching television (R. 47), visiting with neighbors (R. 48), fixing meals (R. 51), taking care of her dog, including walking her daily (R. 51, 53, 83), grocery shopping, attending church a couple of times a week (R. 83), volunteering at the temple two days a week (R. 83), driving to the store or doctor (R. 83-85), and making crafts, such as fabric painting (R. 85).

In the second hearing, a Vocational Expert ("VE") testified (R. 109-114). The VE testified that other work existed, assuming an individual could stand, walk and sit for six hours in an eight-hour workday; lift 20 pounds; occasionally climb, kneel, crouch and balance; had slight limitations with understanding, remembering, performing and carrying out simple and repetitive tasks moderate limitations with detailed instructions; and moderate limitations dealing with the public and co-workers (R. 111-113). The VE testified that if Plaintiff's manipulative limitations were considered credible, it would significantly erode the sedentary work base for such a person, but would not impact the ability of the person to perform the job of surveillance system monitor (R. 114).

The ALJ, after summarizing the record evidence, found that Plaintiff had the severe impairments of bilateral carpal tunnel syndrome, degenerative disc and joint disease of the lumbar spine, bilateral knee osteoarthritis, and depression; impairments which are severe, but not equal to or exceeding the Listings (R. 19-20). The ALJ found that Plaintiff had the residual functional capacity to stand, walk and sit six hours in an eight-hour workday and lift 20 pounds; she had occasional limitations in climbing, kneeling, crouching and balancing; she had slight limitations with understanding, remembering, performing and carrying out simple and repetitive tasks; and she had moderate limitations with detailed instructions and with dealing with co-workers and the public (R. 21, 23). The ALJ determined that Plaintiff could not return to her past work, but relied on the vocational expert testimony to establish the existence of a significant number of jobs in the state and national economy that Plaintiff could perform in spite of these limitations (R. 22-24). As a result, Plaintiff was found to be not disabled.

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff raises just two issues on review: "Defendant improperly decided this claim because (i) the ALJ's determination of the claimant's RFC was not based upon "substantial evidence" because the ALJ failed to properly consider the objective medical evidence of the claimant's chronic bilateral CTS, with hand pain, numbness and gripping problems, and further failed to properly assess the

effects of this condition on the claimant's ability to perform the manipulative tasks required for most light work; and (ii) the ALJ failed to determine whether the claimant's morbid obesity is a "severe" impairment or to properly assess the effect of the claimant's morbid obesity on her RFC, as required by SSR 02-01p." (Doc. No. 15 at 20). The Court is not persuaded by either contention.

### *Plaintiff's carpal tunnel syndrome*

Plaintiff contends that the ALJ did not address the medical and other evidence of Plaintiff's hand pain and limitations in a fair and impartial manner, in that the ALJ "has failed to properly explain why he has essentially disregarded" the EMG studies, which are consistent with Plaintiff's testimony *Id.* at 15. Plaintiff cites to an online pamphlet on carpal tunnel syndrome as support for her argument that the disorder is more than mere grip strength weakness, and contends that the ALJ "has failed to refute objective EMG testing." The Court finds that this contention does not address the Court's limited role on review. The question is not whether the ALJ "refuted" evidence; the question is whether the decision the ALJ reached is supported by substantial (not unanimous, not overwhelming) evidence. Here, the record supports the ALJ's findings.

The ALJ did not disregard the findings carpal tunnel syndrome, including the nerve conduction testing, and, in fact, noted Dr. Cox's examination and the testing results (R. 18), as well as Plaintiff's claims of difficulties picking up items (R. 19) and other allegations of hand limitations (R. 20). The ALJ found that Plaintiff's carpal tunnel syndrome was a severe impairment, but that it did not include gross or fine manipulation deficits in this case (R. 20). This finding is supported by substantial evidence.

Significantly, the ALJ *credited* the limitations found by Dr. Cox, but those limitations only precluded repetitive bending, stooping or heavy lifting (R. 381). While Plaintiff interprets the testing

to mean that Plaintiff's use of her hands is significantly restricted, no physician, treating or examining, so concluded. In fact, there is no evidence of any physician placing a functional limitation or restriction on the ability of Plaintiff to use her hands, and Dr. Ryan and Dr. Perdomo specifically noted *no* manipulative limitations, a finding which is consistent with that of the agency non-examining physicians. As such, the finding of no disabling manipulation deficits is amply supported by substantial medical evidence.

As for Plaintiff's testimony, the ALJ found Plaintiff's allegations of significant problems with her hands to be not totally credible (R. 20). Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ noted that the medical reports (summarized above) and her reported activities of daily living did not support the significant limitations she was claiming, with respect to her hands (R. 20). The ALJ noted (and the record supports) that Plaintiff was able to complete many forms in support of her application, reported doing word search puzzles, fabric painting, driving, washing dishes, folding laundry and other housework; all activities which require use of the hands, and belie her testimony of significant restriction. *Id.* As the ALJ adequately supported his credibility determination by citing to the medical reports and pointing out contradictions in Plaintiff's testimony,

the finding is supported by substantial evidence. Moreover, and perhaps most importantly, as noted by the ALJ, the VE testified that even if Plaintiff's allegations of manipulation difficulties were fully credited, it would not impact her ability to perform the job of surveillance systems monitor (R. 23). As such, any error in not fully crediting the testimony is harmless on this record.

*Obesity*

Plaintiff next contends that the ALJ failed to determine whether Plaintiff's morbid obesity is a "severe" impairment or to properly assess the effect of her obesity on her RFC. It appears that Plaintiff is contending that the decision must be reversed, as obesity was not listed separately as a severe impairment. The Court rejects that contention.

According to SSR 02-1p, obesity is considered a medically determinable impairment and its effect must be considered when evaluating disability. See 20 C.F.R. pt. 404, subpt. P. app. 1, § 1.00Q. The effects of obesity should be considered, not only under the Listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's RFC. SSR 02-1p further states that when the Commissioner identifies obesity as a medically determinable impairment, any functional limitations resulting from the obesity will be considered in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that the Commissioner identifies.

Initially, the Court notes that Plaintiff herself did not claim "morbid obesity" as one of her disabling impairments (R. 141, 164).[3] While Plaintiff correctly notes that the record is uncontradicted that Plaintiff was morbidly obese, it is also clear that the ALJ did, in fact, consider this impairment

---

[3]At hearing, her attorney noted that Plaintiff had "been diagnosed, of course, with obesity which is, you know, I'm sure contributed to some of her condition as far as osteoarthritic in her hips, knees, and lower back." (R. 38). The ALJ *did* evaluate Plaintiff's claims of osteoarthritis in her back and knees and found this impairment to be "severe" at step 2. (R. 19).

throughout the opinion, (*see* R. 17-19*)* and specifically referenced her obesity in determining the RFC (R. 20 and 21, the ALJ adopted the restrictions placed on Plaintiff by Dr. Ryan "due to her obesity."). Plaintiff has not alleged any prejudice in the ALJ's failure to separately cite obesity at step two and, as the ALJ did, in fact, consider Plaintiff's obesity and functional limitations resulting from it in determining her RFC, any such error is harmless. *See, generally, Street v. Barnhart,* 340 F. Supp. 2d 1289 (M.D. Ala. 2004), *affirmed* 133 Fed. Appx. 621 (11th Cir. 2005) (unpublished) (ALJ's failure to list claimant's low IQ as a distinct severe impairment did not require reversal of finding that claimant was not disabled; ALJ referred to a consultative examiner's finding that claimant suffered from depression, and to claimant's borderline intellectual functioning). [4]

## *CONCLUSION*

The Court has reviewed Plaintiff's allegations of error and finds them to be without merit. As the decision is supported by substantial evidence and was made in accordance with appropriate legal standards, it is **AFFIRMED.**  The Clerk is directed to enter judgment accordingly and to close the file.

**DONE** and **ORDERED** in Orlando, Florida on December 12, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[4] Note that the frequent mention of Plaintiff's obesity in the ALJ's opinion distinguishes this case from the one cited by Plaintiff.  In *Brown v. Barnhart,* 325 F. Supp. 2d 1265 (N.D. Ala. 2004), the Court found that the ALJ "ignored" the diagnosis of obesity and "failed to take the [diagnosis] into consideration in reaching his decision." *Id.* at 1273.